UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA WILSON, et al.,

    Plaintiffs,

vs.                                                                  Case No. 8:10-cv-0489-T-27EAJ

SARASOTA COUNTY, et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendants' motion to dismiss Plaintiffs' third amended complaint (Dkt. 32). Plaintiffs have responded in opposition (Dkt. 33). Upon consideration, the motion is GRANTED *in part.*

### Background

Plaintiffs, proceeding *pro se*, commenced this action under 42 U.S.C. § 1983, alleging various violations of their constitutional rights. Their complaint has been dismissed three times for, among other things, the failure to state a claim upon which relief can be granted. The third amended complaint is Plaintiffs' final attempt to state a cause of action (see Dkt. 25).

The gist of Plaintiffs' claims is that their constitutional rights were violated when Defendants seized their dogs. Specifically, Plaintiffs contend that Deputy Pitman, ASW Perez, Lieutenant Stroud, and Deputy Eve (1) violated their Fourth Amendment right to be free from unreasonable seizures, (2) deprived them of the right to procedural due process, (3) took their property without just compensation, and (4) violated the Americans with Disabilities Act and the Equal Protection Clause of the Florida Constitution. In addition, Plaintiffs allege that their substantive due process rights were violated by the Sarasota County Sheriff's policy, practice, and custom of inadequate training,

supervision, and discipline. Plaintiffs have also named Sarasota County as a Defendant. Defendants moved to dismiss the third amended complaint, arguing that Plaintiffs have not cured any of the defects that plagued their earlier complaints.[1]

"If ever the resolution of a dispute belonged at the local level of government, it is this dispute over what to do about the plaintiff[s'] inability or, more likely, unwillingness to control" and care for their dogs. *Wall v. City of Brookfield*, 406 F.3d 458, 459 (7th Cir. 2005). By the time their dogs were seized in January 2010, Plaintiffs had already been ticketed twice, once because a dog escaped from their yard, and another time because their dogs bit a neighborhood child. "This is a neighborhood squabble over a dog, a squabble properly to be resolved at the neighborhood or local level rather than by federal judges." *Id.* (affirming judgment and directing plaintiff to show cause "why she should not be sanctioned for making a frivolous argument in a meritless case").

The bulk of Plaintiffs' constitutional claims are properly dismissed at the pleadings stage. And because this is Plaintiffs' final pleading attempt (see Dkt. 25), dismissal will be with prejudice. However, Plaintiffs have arguably pled a claim under the Fourth Amendment, and therefore, this action will not be dismissed in its entirety.

**Standard**

Fed. R. Civ. P. 8(a)(2) requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed allegations are not required, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[1] Plaintiffs did not request dismissal based on the defense of qualified immunity. They simply argue that Plaintiffs pled insufficient facts to determine the applicability of the defense.

liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Contrary to Defendants' argument, Plaintiffs' § 1983 complaint is not subject to a heightened pleading standard. *See Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). "Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense" must only "comply with the standards described in *Iqbal*." *Id.* In applying these standards, a "district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations." *Id.* at 709-10. "The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 710.

## Discussion

**Fourth Amendment**

Count I of Plaintiffs' third amended complaint is labeled "Procedural Due Process Violation." But it is clear from a fair reading that Plaintiffs are attempting to allege a violation of the Fourth Amendment right to be free from unreasonable seizures.[2] *See Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). Contrary to Defendants' argument, Plaintiffs did plead factual allegations supporting Count I. Specifically, Plaintiffs allege

---

[2] The Fourth Amendment prohibition on unreasonable seizures was made applicable to the states by the Fourteenth Amendment. *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992).

3

that in July 2008, Defendant Perez seized one of their dogs without a warrant. Plaintiffs further allege that Defendants Perez, Pittman, and Stroud seized several of their dogs on another occasion without a warrant. Plaintiffs also allege that in January 2010, Defendants Eve and Perez entered their home by coercion and seized their dogs without a warrant and without any emergency exigencies. Because Defendants have not demonstrated that Plaintiffs failed to state a cause of action for the violation of their Fourth Amendment rights, Count I will not be dismissed.

**Fifth Amendment**

In Count II, "Seizing Property Without Just Compensation," Plaintiffs allege that Defendants did not return their dogs or provide any compensation. Defendants respond that the Takings Clause of the Fifth Amendment does not require compensation for the seizure of neglected animals.[3] In the amended complaint and second amended complaint, Plaintiffs made clear that their dogs were seized pursuant to Fla. Stat. § 828.073, which authorizes law enforcement officers to remove "a neglected or mistreated animal . . . from its present custody."

"The seizure and disposal of neglected animals falls squarely within the state's police power." *Porter v. DiBlasio*, 93 F.3d 301, 310 (7th Cir. 1996). "As such, the state's disposal of neglected animals falls within the class of property deprivations for which the Fifth Amendment does not require compensation." *Id.* Likewise, no compensation is due when the seizure is necessary to abate a nuisance, to protect the public health, or to prevent the dogs from injuring the rights of others. *See, e.g., Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1029 (1992). Accordingly, Plaintiffs are not entitled to compensation for the impoundment of their dogs.[4]

---

[3] The Takings clause of the Fifth Amendment was made applicable to the states by the Fourteenth Amendment. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001).

[4] Plaintiffs allege that the animals "were not in any serious or dire emergency situations." (Third Am. Compl. ¶ 25). But their quarrel with the determination of neglect does not render the seizure a 'taking' for which compensation was required. Plaintiffs admitted in their amended complaint and second amended complaint that the issue of neglect

**Procedural Due Process**

Count II also contains a reference to procedural due process, as Plaintiffs allege that "Defendants seized Plaintiffs' valuable and unique property without any pre-seizure process or pre-deprivation hearing . . . ." (Third Am. Compl. ¶ 25). It should be noted that Plaintiffs do not contend that they received inadequate process following the removal of their dogs. Indeed, Plaintiffs alleged in their amended complaint and second amended complaint that they received a hearing at which they were able to present veterinarian records, pictures of the animals' living conditions, and testimony from several expert witnesses. Plaintiffs have therefore limited their procedural due process claim to the assertion that they were entitled to a hearing before the removal of their dogs.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Reams v. Irvin*, 561 F.3d 1258, 1263 (11th Cir. 2009) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). "[D]ue process is a flexible concept that varies with the particular circumstances of each case," and therefore, courts "apply the balancing test articulated in *Mathews v. Eldridge* . . . to determine whether pre-deprivation process was required." *Id.* "Under *Mathews*, the specific dictates of due process in any given case are determined by considering: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Reams*, 561 F.3d at 1263-64 (quotation omitted).

Although Plaintiffs have a property interest in their dogs, the risk of an erroneous deprivation was relatively low. Plaintiffs allege that Defendant Eve looked at the animals and took pictures of

---

was resolved against them in a post-impoundment state court proceeding.

5

the area before seizing the dogs. (Third Am. Compl. ¶ 19). "[R]equiring additional procedural safeguards in the form of a hearing prior to impoundment would run the risk of causing further harm to animals" which the seizing officer had determined were suffering from neglect or mistreatment. *Reams*, 561 F.3d at 1264. To temper any potential error, the Florida legislature enacted Fla. Stat. § 828.073(2), which mandates a hearing within 30 days "to determine whether the owner, if known, is able to provide adequately for the animal and is fit to have custody of the animal." To require a hearing before removal, in addition to the post-deprivation process afforded by Fla. Stat. § 828.073(2), would impose a substantial fiscal and administrative burden on the government. Moreover, "the state's interest in preventing the inhumane treatment of animals is undeniably substantial and would be significantly compromised if the state were to require a hearing before impounding" neglected or mistreated animals. *Reams*, 561 F.3d at 1264. Weighing the competing interests, a hearing was not required prior to the removal of Plaintiffs' dogs. *See id.*; *Wall*, 406 F.3d at 460. The statutorily-mandated post-deprivation hearing provided sufficient procedural safeguards to protect Plaintiffs' property interests.

**Americans with Disabilities Act and Equal Protection**

Plaintiffs contend that Defendants violated their rights under the Americans with Disabilities Act and the Equal Protection Clause of the Florida Constitution because some of the seized dogs were "therapy pets" that were prescribed to treat Post-Traumatic Stress Disorder.[5] (Third Am. Compl. ¶¶ 5-6). Plaintiffs frame this claim as an "equal protection violation," arguing that they were treated differently on account of a disability.

To state a claim for discrimination under the ADA, a plaintiff must show that "(1) she has

---

[5] "No person shall be deprived of any right because of race, religion, national origin, or physical disability." Fla. Const. Art. I, § 2.

a disability; (2) she is a qualified individual; and (3) she was discriminated against because of her disability." *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996); 42 U.S.C. § 12132. Although Plaintiffs allege that they notified the officers that the dogs were therapy pets, they have not pled any facts to show that they were discriminated against on account of a disability. Nor have Plaintiffs alleged or argued that the officers should have made any reasonable modifications to their procedures in order to accommodate Plaintiffs' disabilities. Absent a connection between their disabilities and Defendants' seizure of the animals, Plaintiffs have not stated a cause of action for discrimination under the ADA or Florida law. *See St. Johns Cnty. Sch. Dist. v. O'Brien*, 973 So. 2d 535, 540 (Fla. 5th DCA 2007) (Florida's disability discrimination law is construed in conformity with the ADA).

**Substantive Due Process**

Count IV of the third amended complaint consists of two substantive due process claims which, together, allege that the Sarasota County Sheriff engaged in a policy, practice, or custom of failing to adequately train, supervise, and discipline his subordinates. Plaintiffs contend that this amounted to a "deliberate indifference" to the rights of the citizens of Sarasota County.

It is well-settled that a substantive due process claim cannot be established by a showing of mere negligence. *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1375-76 (11th Cir. 2002). "As a general rule, to prevail on a claim of a substantive due-process violation, a plaintiff must prove that a defendant's conduct 'shocks the conscience.'" *Id.* at 1375 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 836, 846-47 (1998)). Allegations that a party failed to train, supervise, and discipline his employees do not rise to the level of an "omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992). Nor do allegations of "deliberate indifference" when they are made in a non-

custodial setting such as this. *See Nix*, 311 F.3d at 1377. Accordingly, Plaintiffs have not stated a substantive due process claim.

**Liability of the Sheriff and the County**

In Count IV, Plaintiffs arguably seek to hold the Sheriff liable for the constitutional violations of his subordinates. To the extent Plaintiffs make such a claim, it must be rejected. Section 1983 claims "may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." *Amnesty Intern., USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009). Apart from personal participation (which Plaintiffs have not alleged), supervisors can only be liable under § 1983 when "there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Id.* at 1180-81 (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)). "A causal connection can be established by, *inter alia*, 'facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (quoting *Gonzalez*, 325 F.3d at 1234).

The only claim mentioning the Sheriff, Count IV, contains nothing more than conclusory allegations devoid of any factual support. Plaintiffs have not alleged any facts which would support a plausible inference that the Sheriff was personally involved, that he directed or failed to prevent the officers' actions, or that a history of widespread abuse put him on notice of the alleged constitutional violations. Stripped of its vague and conclusory allegations, Count IV does not plead sufficient facts to state a cause of action for supervisory liability. *See Randall*, 610 F.3d at 709; *Gonzalez*, 325 F.3d at 1235-36.

The County also cannot be held liable on a theory of respondeat superior. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *City*

8

*of Canton v. Harris*, 489 U.S. 378, 385 (1989) (quotation omitted). Therefore, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell*, 392 F.3d at 1289. "[T]o demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice," as opposed to a single incident. *Id.* at 1290 (quotation omitted).

The only reference to the County in the third amended complaint is the allegation that Defendants Pitman, Perez, Stroud, and Eve were employees of the Sarasota County Sheriff's Office. The pleading lacks any mention of a County policy or custom which caused the alleged constitutional violations. To the extent Plaintiffs rely on the allegations in Count IV, their claim necessarily fails because, as discussed, Plaintiffs offered no facts to support their conclusory allegations. Plaintiffs therefore failed to state a cause of action against the County under § 1983.[6]

## Conclusion

In sum, Plaintiffs' Takings, Procedural Due Process, ADA/Equal Protection, and Substantive Due Process claims are subject to dismissal. Plaintiffs claims against the Sheriff and Sarasota County are also due to be dismissed. And because an action against an officer in his or her official capacity is "in all respects other than name, to be treated as a suit against the entity," the dismissal of Sarasota County compels dismissal of Plaintiffs' claims against the remaining Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

All that remains is the claim against Defendants Pitman, Perez, Stroud, and Eve in their

---

[6]Although unnecessary to the resolution of this matter, the Court is not persuaded by Defendants' argument that the County is not subject to suit for the Sheriff's practices, policies, and customs with respect to training, supervision and discipline of his deputies. *See White v. Polk Cnty., Fla.*, No. 8:04-cv-1227-T-26EAJ, 2006 WL 1063336 (M.D. Fla. Apr. 21, 2006), *aff'd*, 207 F. App'x 977 (11th Cir. 2006); *see also Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298 (11th Cir. 2005); *Lucas v. O'Loughlin*, 831 F.2d 232 (11th Cir. 1987); *but see Troupe v. Sarasota Cnty., Fla.*, No. 8:02-cv-53-T-24MAP, 2004 WL 5572030 (M.D. Fla. Jan. 22, 2004).

individual capacities for violations of Plaintiffs' Fourth Amendment right to be free from unreasonable seizures.[7] This is not to say that Plaintiffs will ultimately prevail on such a claim, only that this cause of action survives the motion to dismiss.

Based on the foregoing, Defendants' motion to dismiss (Dkt. 32) is GRANTED *in part*.

(1) Plaintiffs' Takings, Procedural Due Process, ADA/Equal Protection, and Substantive Due Process claims are DISMISSED with prejudice.

(2) Plaintiffs' claims against the Sheriff and Sarasota County are DISMISSED with prejudice.

(3) Plaintiffs' claims against Defendants Pitman, Perez, Stroud, and Eve in their official capacities are DISMISSED with prejudice.

(4) Defendants Pitman, Perez, Stroud, and Eve, in their individual capacities, shall answer Plaintiffs' remaining claim within 14 days.

(5) *Pro se* parties are not entitled to recover attorney's fees, and therefore Plaintiffs' request for attorney's fees is STRICKEN. *See Kay v. Ehrler*, 499 U.S. 432 (1991).

(6) The parties shall file a joint case management report within 21 days.

**DONE AND ORDERED** this 25th day of October, 2011.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Unrepresented parties, Counsel of record

---

[7] In addition to the reasons discussed above, Plaintiffs' references to the Florida Constitution, Article I §§ 1, 2, 6, 9, 16, 17, 23, and Article X, § 6 are not supported by sufficient facts and therefore fail to state a cause of action.